965 F.2d 868
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE HUNDRED FORTY-NINE THOUSAND FOUR HUNDRED FORTY-TWO AND
43/100 DOLLARS ($149,442.43) IN UNITED STATES CURRENCY; and
One 1988 Chevrolet Suburban Classic, VIN 1GBER16K5JF136752;
and One 1989 Chevrolet Silverado Pickup, VIN
1GCGC24K1KE122725, Defendants,
Thomas Ray Fisher and Janetta June Fisher, Claimants-Appellants.
 No. 90-5261.
 United States Court of Appeals,
Tenth Circuit.
 May 27, 1992.
 
 1
 W. Creekmore Wallace, II, Sapulpa, Okl., for claimants-appellants.
 
 
 2
 Tony M. Graham, U.S. Atty., and Catherine J. Depew, Asst. U.S. Atty., Tulsa, Okl., for plaintiff-appellee.
 
 
 3
 Before ANDERSON and SETH, Circuit Judges, and SAFFELS, District Judge*.
 
 
 4
 SAFFELS, District Judge.
 
 
 5
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 6
 Claimants, Tom and June Fisher, appeal from a judgement of the District Court ordering the forfeiture of $149,442.43 in United States currency; one 1988 Chevrolet Suburban Classic VIN 1GBER16K5JF136752; and one 1989 Chevrolet Silverado Pickup VIN 1GCGC24K1KE122725 in accordance with 21 U.S.C. § 881(a)(4) and (a)(6)[1] and 26 U.S.C. §§ 7301(a) and 7302.
 
 
 7
 In this case, the United States sought forfeiture of the defendant currency and various vehicles which were seized during the execution of a search warrant of the claimants' residence. The search warrant covered financial records of drug transactions, monies derived from or produced for the procurement of illicit drugs and other items evidencing claimant Tom Fisher's ("claimant Fisher's") involvement in drug trafficking. During the execution of the search warrant, a total of $149,442.43 in United States currency was found in claimant Fisher's home, most of which was discovered in a plastic ammunition box in a cupboard in the laundry room. Also seized were financial records, drug notation records, a small quantity of marijuana, triple beam scales, a digital scale and 14 various firearms. The district court upheld the validity of the search warrant and its execution, and denied claimant's motion to suppress.
 
 
 8
 Thereafter, the district court conducted a four day bench trial. After receiving and considering the evidence, the district court ruled that all of the items seized, except five vehicles, were properly seized under 21 U.S.C. § 881(b)(1),[2] because they were discovered incident to the execution of a valid search warrant and were subject to forfeiture due to the existence of a sufficient nexus to criminal activity, namely drug trafficking and tax evasion. In reaching this conclusion, the district court found that the claimants had failed to establish by a preponderance of the evidence that the property and currency were derived from legitimate income or that the defendant property was not used to facilitate drug trafficking. The court further ruled that the government had failed to establish a nexus between the goods and illegal gambling pursuant to 18 U.S.C. § 1955. The court ordered the return of five vehicles.
 
 I. Motion to Suppress
 
 9
 Claimants first contend on appeal that the district court erred in denying their motion to suppress because the issuance of the search warrant and its execution were improper. Specifically, appellants contend that the warrant was not supported by probable cause because the information relied upon was stale, was based upon hearsay, mere opinion of the affiant officer, and failed to establish a nexus between the claimants' residence and evidence of illegal activity. Appellants further contend that the affiant had deliberately omitted salient facts. Last, appellants contend that the trial court erred in denying their motion to suppress because the execution of the search warrant was overbroad, and thus, it was turned into an impermissible general search in violation of the fourth amendment.
 
 
 10
 Although forfeiture proceedings are inherently civil in nature, they are not to be effectuated in derogation of one's constitutional rights. United States v. $3,799.00 in United States Currency, 684 F.2d 674, 677 (10th Cir.1982) (citing One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965)). Thus, any defects in process used to secure the possession of defendant property may defeat the government's right to possession, inasmuch as the government will be barred from introducing evidence illegally seized in violation of the fourth amendment to prove a claim of forfeiture. Id. (citing Bramble v. Richardson, 498 F.2d 968 (10th Cir.1974), cert. denied, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974)).
 
 
 11
 In determining whether the district court properly denied claimants' motion to suppress, this court must accept the trial court's findings of fact unless they are clearly erroneous. United States v. Lopez, 777 F.2d 543, 548 (10th Cir.1985) (citing United States v. Cooper, 733 F.2d 1360, 1364 (10th Cir.), cert. denied, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984)). Furthermore, the evidence must be considered in the light most favorable to the government. United States v. Short, 947 F.2d 1445, 1449 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992); United States v. McAlpine, 919 F.2d 1461, 1463 (10th Cir.1990).
 
 A. Probable Cause
 
 12
 In assessing whether a search warrant is supported by probable cause, a magistrate's determination of probable cause must be given considerable deference. Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). However, reviewing courts will not defer to a magistrate's determination if the affidavit provides no substantial basis for determining the existence of probable cause. United States v. Leon, 468 U.S. 897, 915, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984).
 
 
 13
 Upon consideration of the search warrant and supporting affidavit, we conclude that a substantial basis exists to find probable cause for the issuance of the search warrant. A review of the supporting affidavit, reveals that the affiant, Officer Larry Fugate ("Officer Fugate" or "affiant officer") was employed as a Cook County Deputy Sheriff and had been assigned to the drug division for two years at the time of the affidavit. The affidavit further reveals that Officer Fugate worked as a police officer for 11 years. During his employment, Officer Fugate received specialized training while working with seasoned narcotics investigators. This training included his participation in several undercover drug investigations. (Appendix to Corrected Brief of Appellants, at 54.)
 
 
 14
 His supporting affidavit further states that he had received information from a reliable confidential informant ("informant number one"), who had previously given his department reliable information on four separate occasions resulting in four arrests and convictions. This same confidential informant stated that claimant Fisher was dealing in narcotics of various types including: cocaine, methamphetamine and marijuana, and that on one of several occasions during the last two years, informant number one had seen claimant Fisher in the possession of one pound of methamphetamine, ten pounds of marijuana and two ounces of cocaine. According to informant number one, Fisher was the largest supplier of narcotics on the west side of Creek County, Oklahoma. Informant number one further stated that claimant Fisher, who previously had been in the bricklaying business, had not done any bricklaying for the last two years, and that claimant Fisher now engaged in fighting gamecocks as a cover while he traveled out of state to buy or sell narcotics. Informant number one drove Officer Fugate by the claimant's house and showed him where claimant Fisher lived. (Appendix to Corrected Brief of Appellants, at 54.)
 
 
 15
 The affiant officer further swore that he investigated the background of claimant Fisher, and this investigation revealed that claimant Fisher had been arrested three times on narcotics-related charges. Further, claimant Fisher had been arrested on one occasion for DUI. At the time of his arrest for DUI, he had $12,888.64 in cash. Affiant's investigation also revealed that claimant Fisher had purchased a parcel of real estate and had paid in excess of $45,000 in cash. During recent years, claimant Fisher had made other large cash purchases of both real estate and personalty. In Officer Fugate's opinion, large cash transactions are unusual for law abiding citizens. (Appendix to Corrected Brief of Appellants, at 55.)
 
 
 16
 Affiant also received information from a second confidential informant ("informant number two") who had advised him that an individual by the name of "Chris" was dealing claimant Fisher's narcotics at Chris's home. Informant number two had previously provided information to Officer Fugate on three different occasions resulting in the arrests and convictions of four different individuals. Informant number two drove affiant by Chris's home to show the affiant where Chris was allegedly selling claimant Fisher's narcotics. (Appendix to Corrected Brief of Appellants, at 55.)
 
 
 17
 Affiant then conducted a controlled buy from "Chris" through informant number two. During the controlled buy, "Chris" allegedly told informant number two that he had access to an unlimited supply of cocaine through claimant Fisher. (Appendix to Corrected Brief of Appellants, at 57.)
 
 
 18
 Pursuant to the above affidavit, the magistrate judge issued a warrant for:
 
 
 19
 Financial records of drug sales and purchases, records of customers and sources of drug sales, packaging and processing supplies used for drug sales, monies derived from the sale of or for the purchase of drugs, identification documents from this and other defendants, correspondence, notes, ledgers, titles, vehicle registrations, telephone and address books, photographs, evidence of ownership and control of the premises.
 
 
 20
 (Appendix to Corrected Brief of Appellants, at 56.)
 
 
 21
 Based upon the foregoing, we conclude that the magistrate had a substantial basis for finding probable cause to issue the search warrant. When applying a practical, common-sense analysis to the totality of the circumstances, as mandated by Illinois v. Gates, 462 U.S. at 238, 103 S.Ct. at 2331, it is clear that the affiant had two reliable informants whose information was sufficiently corroborated by Officer Fugate's independent and thorough investigation into claimant Fisher's past and current activities. The information provided by the informants was not stale under United States v. Snow, 919 F.2d 1458, 1460 (10th Cir.1990), because informant number one stated that he had been in the presence of claimant Fisher several times during the past two years and that on one occasion claimant Fisher was in the possession of a rather large quantity of drugs. (Appendix to Corrected Brief of Appellants, at 57.) While this information in itself may lack factual specificity as to the exact dates on which claimant was seen in the possession of drugs, this information combined with officer Fugate's independent investigation into claimant Fisher's history of drug-related arrests, the accomplishment of the controlled buy through informant number two one week prior to the signing of the affidavit and claimant Fisher's recent purchases with large amounts of cash, demonstrate a strong probability of continuous ongoing criminal involvement covering a broad span of time. See United States v. Reyes, 798 F.2d 380, 382 (10th Cir.1986) (passage of time is of diminished significance where the activity is of a protracted and continuous nature); United States v. Shomo, 786 F.2d 981, 983 (10th Cir.1986) ("where the affidavit recites facts indicating ongoing, continuous criminal activity, the passage of time becomes less critical."). Thus, we conclude the information provided by the confidential informants was not stale.[3]
 
 
 22
 Appellants' next contention that the affidavit failed to establish a nexus between the claimant's residence and evidence of claimant Fisher's involvement in drug trafficking, namely drug records, is also without merit. The affidavit stated in Officer Fugate's experience as a police officer that drug records are commonly kept where dealers have ready access to these documents. We have previously recognized on several occasions that the mere fact that an affidavit does not contain personal knowledge of illegal activity at the residence is not fatal to the determination of probable cause. See United States v. Williams, 897 F.2d 1034, 1038-39 n. 2 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991); Reyes, 798 F.2d at 382; Anthony v. United States, 667 F.2d 870 (10th Cir.1981), cert. denied, 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982); United States v. Rahn, 511 F.2d 290, 293 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975). Where an affidavit describes circumstances which would warrant a person of reasonable caution to believe that the articles sought would be at appellant's residence, then a sufficient nexus has been established. Rahn, 511 F.2d at 293 (citing United States v. Lucarz, 430 F.2d 1051 (9th Cir.1970)). Further, we have recognized that courts often rely on the opinion of police officers as to where contraband may be kept. See United States v. Medlin, 798 F.2d 407, 409 (10th Cir.1986) (citing United States v. Fama, 758 F.2d 834, 838 (2nd Cir.1985)). Where a suspect has no place of business separate from his residence, it is reasonable for an officer to conclude that evidence may be at the suspect's residence. Medlin, 798 F.2d at 409.
 
 
 23
 In accordance with our prior rulings, we conclude that a sufficient nexus was established between the evidence sought, i.e., evidence of claimant Fisher's involvement with drug trafficking, and his residence. The circumstances described in the affidavit, indicate that claimant Fisher was a large drug dealer who had been dealing drugs over the years. This information combined with the opinion of Officer Fugate, an officer experienced in drug investigations, that drug dealers frequently keep records or notations of their transactions where they have ready access, provides a sufficient nexus for a reasonable person to conclude that drug records would be maintained at the claimant's home which was also his alleged place of business.
 
 
 24
 Appellants also contend that Officer Fugate deliberately omitted salient evidence of claimant Fisher's involvement in gamecock fighting as a source of legitimate income. Under Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), the burden is on the movants to demonstrate deliberate falsity or reckless disregard for the truth by the affiant, supported by an offer of proof. United States v. Sullivan, 919 F.2d 1403, 1424 (10th Cir.1990); United States v. Owens, 882 F.2d 1493 (10th Cir.1989).
 
 
 25
 We affirm the trial court's implicit ruling that the appellants had failed to demonstrate any deliberate falsity or reckless disregard in the statements made by Officer Fugate. The affiant officer's statement did mention that claimant Fisher was engaged in gamecock fighting, albeit as a cover for his drug trafficking activities. (Appendix to Appellant's Corrected Brief, at 54.) Based upon our review of the record, we conclude that claimants failed to demonstrate that any material information was intentionally or recklessly disregarded by the affiant.
 
 B. Execution of the Warrant
 
 26
 Appellants next contend that the execution of the warrant was expanded into an impermissible general search thereby requiring suppression of all the evidence. As a general rule, "only the improperly seized evidence, not all of the evidence, must be suppressed, unless there was a flagrant disregard for the terms of the warrant." Medlin, 798 F.2d at 411 (citing Waller v. Georgia, 467 U.S. 39, 44 n. 3, 104 S.Ct. 2210, 2214 n. 3, 81 L.Ed.2d 31 n. 3 (1984); United States v. Crozier, 777 F.2d 1376, 1381 (9th Cir.1985); Marvin v. United States, 732 F.2d 669, 674-75 (8th Cir.1984); United States v. Tamura, 694 F.2d 591, 597 (9th Cir.1982); United States v. Wuagneux, 683 F.2d 1343, 1354 (11th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); United States v. Heldt, 668 F.2d 1238, 1259-60 (D.C.Cir.1981), cert. denied, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982)). Thus, the relevant inquiry involves a determination of "the effect on the search as a whole of the seizure by the local police of items not named in the warrant." Medlin, 798 F.2d at 411.
 
 
 27
 The district court found that upon execution of the search warrant, Officer Fugate discovered documents characterized as drug-related documents and then contacted the assistant district attorney for advice regarding the scope of the search warrant and whether items not expressly covered by the warrant could be seized. District Court's Order, Case No. 89-C-712-B, filed June 6, 1990, at 2. After reviewing the parties' submissions, the district court concluded that the officers executing the warrant acted objectively reasonable and in good faith in executing the warrant and in the seizure of items not named in the warrant. Id. at 3. Among the items which the appellants contend were seized impermissibly are vehicles, jewelry, two tractors, trailers, and numerous guns. Other personal items seized included: a will, an abstract, medical records, and baby teeth which were stored with various documents.
 
 
 28
 Upon a careful review of the record, we concur with the district court's conclusion that the officers did not flagrantly disregard the scope of the warrant thereby expanding it into an impermissible general search. Although various items not covered by the warrant were seized during the execution of the warrant, the record does not reflect a flagrant disregard of the terms of the search warrant. Indeed, following the seizure of items expressly covered by the warrant including drug customer lists, various documents evidencing large drug transactions, packaging and processing supplies, marijuana traces and stems, and $149,442.43 in United States currency, the record reflects that the officers contacted the assistant district attorney regarding whether specific items not mentioned could be seized. The officers were advised that various other items could be seized under 21 U.S.C. § 881(b)(1) because probable cause existed to support the conclusion that various firearms, jewelry and vehicles were either proceeds of, or were used to facilitate, illegal drug transactions, and thus, they were subject to forfeiture proceedings pursuant to 21 U.S.C. § 881(a)(4) and (6).
 
 
 29
 That these items could be seized pursuant to the above provisions is supported by the affiant officer's research prior to seeking the search warrant indicating that claimant Fisher had purchased parcels of real estate and various vehicles with large amounts of cash totalling $85,750 in 1988 alone. (Appendix to Corrected Brief of Appellants, at 57.) We conclude that this information combined with the discovery of drug records, large amounts of currency at claimants' residence, drug residue and processing equipment gave rise to probable cause that these items were subject to forfeiture proceedings under 21 U.S.C. § 881(a)(4) and (6), and thus, were properly seized under 21 U.S.C. § 881(b)(1). See United States v. Walker, 900 F.2d 1201, 1204 (8th Cir.1990) (court upheld the warrantless search and seizure of items subject to the "facilitation" and "proceeds" section of § 881(a)(4) and (6)). Furthermore, the seizure of the numerous firearms found in close proximity to the tools of the drug trade, i.e., scales and large amounts of cash, was proper because firearms are also considered to be tools of the trade. See United States v. Crespo de Llano, 838 F.2d 1006, 1018 (9th Cir.1987); United States v. Cresta, 825 F.2d 538, 554 (1st Cir.1987), cert. denied, 486 U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). United States v. Martin, 599 F.2d 880, 889 (9th Cir.) cert. denied, 441 U.S. 962, 99 S.Ct. 2408, 60 L.Ed.2d 1067 (1977). Based upon the foregoing, we conclude that seizure of the above items was proper and did not turn the search into a general search. Nor, does our review of the record convince us that the officers executing the warrant demonstrated a flagrant disregard for the scope of the warrant. Accordingly, we affirm the district court's denial of claimants' motion to suppress.
 
 II. Forfeiture of Claimants' Property
 
 30
 In determining whether the district court properly found the defendant property subject to forfeiture, the reviewing court must affirm findings of fact, unless they are clearly erroneous. United States v. One Beechcraft Baron, No. N242BS, 788 F.2d 384, 388 (6th Cir.1986); United States v. One Twin Engine Beech Airplane, 533 F.2d 1106, 1107 (9th Cir.1976). Similarly, factual inferences derived from basic facts must be accepted unless clearly erroneous. One Twin Engine Beech Airplane, 533 F.2d at 1107-08. However, whether the facts produced at a forfeiture proceeding constitute probable cause is a question of law which must be reviewed de novo by this court. United States v. One 1987 Mercedes 560 SEL, 919 F.2d 327, 330 (5th Cir.1990).
 
 
 31
 A forfeiture proceeding is an in rem proceeding brought against the property seized pursuant to the legal fiction that the property itself is guilty of a crime or is proceeds of a crime. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-84, 94 S.Ct. 2080, 2090-92, 40 L.Ed.2d 452 (1974). In forfeiture proceedings, the government bears the initial burden to show probable cause for the institution of the forfeiture action. United States v. One 1957 Rockwell Aero Commander, Etc., 671 F.2d 414, 417 (10th Cir.1982). Once probable cause has been established, the claimant bears the burden of proving that the requested forfeiture does not fall within the four corners of the statute. Id. (citing United States v. One 1977 Chevrolet Pickup, Etc., 503 F.Supp. 1027 (D.Colo.1980)); see also United States v. $3,799.00 in United States Currency, 684 F.2d 674, 676 (10th Cir.1982). If no such rebuttal is made, a showing of probable cause alone will support a judgment of forfeiture. United States v. One 1980 Red Ferrari, 875 F.2d 186, 188 (8th Cir.1989).
 
 
 32
 As stated previously, the government sought forfeiture pursuant to several statutory provisions, 21 U.S.C. § 881(a)(4) and (a)(6); 26 U.S.C. §§ 7301(a) and 7302; and 18 U.S.C. § 1955.[4] The test for determining probable cause for forfeiture purposes is the same as applies in arrests, searches and seizures. Accordingly, the government must demonstrate a reasonable ground for belief of guilt supported by less than prima facie proof, but more than mere suspicion. See Walker, 900 F.2d at 1204; United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980); United States v. One 1975 Ford F100 Pickup Truck, 558 F.2d 755, 756 (5th Cir.1977).[5] "Circumstantial evidence of drug transactions may support the establishment of probable cause." Padilla, 888 F.2d at 644. However, the presence or absence of any single factor is not dispositive. United States v. United States Currency, $83,310.78, 851 F.2d 1231, 1236 (9th Cir.1988). Once probable cause for forfeiture has been established, claimants may recover the defendant property only by establishing a defense to forfeiture by a preponderance of the evidence.
 
 
 33
 We conclude that the government established probable cause to believe that the defendant property was either proceeds of or was used to facilitate drug trafficking. The unusually large amount of hidden currency, the presence of drug paraphernalia, including packaging supplies and drug notations reflecting large drug transactions, establishes a sufficient nexus between the defendant property and claimant Fisher's involvement in drug trafficking. While we recognize that a large amount of hidden currency in itself is not enough to establish that the money was furnished or was intended to be furnished in return for drugs, this evidence is strong evidence of such an illicit connection to drug trafficking. See Padilla, 888 F.2d at 644; United States v. $93,685.61 in United States Currency, 730 F.2d 571, 572 (9th Cir.1984). Moreover, where this evidence is accompanied by other persuasive evidence such as the presence of drugs and drug paraphernalia, and notebooks containing notations of large drug transactions, we conclude that probable cause has been established that the defendant property is either proceeds of or was used to facilitate drug trafficking. Padilla, 888 F.2d at 643.
 
 
 34
 Claimants next contend that the district court erred in finding that they had failed to prove a defense. Specifically, claimants contend that they established by a preponderance of the evidence the legitimacy of the defendant property by presenting evidence of a substantial income derived from gamecock or chicken fighting. Thus, claimants contend, the property was not subject to forfeiture under 21 U.S.C. § 881(a)(6) because the subject property was derived from legitimate sources of income.
 
 
 35
 In this regard, claimant June Fisher testified at the trial about Tom Fisher's successful chicken fighting business, and further testified that the currency taken from their home consisted entirely of derby winnings. Claimants also offered the testimony of several witnesses who testified about claimant Fisher's alleged winnings and widespread reputation as a successful chicken fighter. However, claimants produced no credible documentation to substantiate claimant Fisher's alleged winnings. Claimants also offered testimony regarding another potential source of legitimate income involving an alleged promissory note for $200,000 issued by several unidentified Mexican investors during 1987. In this regard, claimants proffered the testimony of Daniel Cobes Torres, whose testimony the district court found to be wholly lacking in credibility. Finally, claimants proffered evidence of an inheritance received from the estate of claimant Fisher's father.
 
 
 36
 We discern no basis on which to conclude that the district court's factual findings are clearly erroneous. While appellants proffered several alternate legitimate sources of income in attempting to avoid forfeiture under Section 881(a)(4) and (6), none of these sources adequately accounts for the large amount of currency hidden in the house and the numerous significant expenditures of the claimants during the years in question, including the purchase of the two forfeited vehicles. Furthermore, although various witnesses testified that claimant Tom Fisher was a highly successful chicken fighter, no documentation or other substantiation was offered to buttress this testimony other than the testimony of Stephen R. Scott ("Scott"), an officer of the Mid-America and Kellyville Rooster Fighting Game Clubs. Scott testified that neither club maintained records of winnings. While testifying that claimant Fisher had a good year in 1988, Scott also testified that chicken fighting is more of a hobby because it is difficult to make a profit due to substantial overhead, and that no one chicken fighter has been successful from year to year, including Tom Fisher. (Supplemental Appendix of Appellee, at 284.) In this regard, no evidence was introduced establishing how much, if any, actual or net income claimant Fisher derived from his alleged derby winnings. Finally, the third alternate source of legitimate income proffered by appellants was an inheritance from the estate of Tom Fisher's father in the amount of $33,588.70. However, $22,088.70 of this income was used to purchase a 20 acre real estate tract, leaving a surplus of slightly more than $11,000, an amount substantially less than $149,442.43 and an amount which would be inadequate to account for claimants' numerous expenditures during recent years.
 
 
 37
 We conclude that claimants' proffer of three "possible" innocent sources of income does not vitiate the government's showing of a strong probability that the source of the money is in fact illegal drug activity. See U.S. v. $41,305 in U.S. Currency and Traveler's Checks seized from house of Hoback, 802 F.2d 1339 at 1345 (11th Cir.1986). ("[w]here the government has presented evidence of an illegal source, the claimant must do more than show the existence of possible legitimate sources of cash.") In this case, the government made a strong showing of a probable illegal source while the claimants have failed to rebut the government's showing with credible evidence to support their defense of alternate legitimate sources. Moreover, the only evidence offered as potential alternate sources of income was found to be either unsubstantiated or to be wholly lacking in credibility. Trial court assessments of witness credibility are to be given special deference. Anderson v. City of Bessemer, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); see also United States v. Premises Known as 427 Chestnut Street, etc., 731 F.Supp. 183, 187 (E.D.Pa.1990). Our review of the record simply provides no basis on which to conclude that the trial court's assessments of credibility or other findings of fact were erroneous. The judgment of the district court with respect to the defendant currency is affirmed.
 
 
 38
 Similarly, we conclude that the defendant vehicles were subject to forfeiture under either subsection 881(a)(4) or (6). The record reflects that the 1989 Chevrolet Silverado Pickup contained a loaded pistol and a notebook containing drug notations. Thus, although this vehicle did not contain any drugs at the time of its seizure, it contained tools of the drug trafficking trade, indicating that it had been used to facilitate drug trafficking. See 21 U.S.C. § 881(a)(4). Accordingly, we affirm the district court's conclusion that it was subject to forfeiture under section 881(a)(4); United States v. One 1979 Porsche Coupe, VIN 9289200514, 709 F.2d 1424, 1427 (11th Cir.1983) (although vehicle contained neither contraband nor money, the vehicle which transported pivotal figure to transaction was subject to forfeiture); United States v. One 1981 Datsun 280ZX, 563 F.Supp. 470, 473 (E.D.Pa.1983) (vehicle need not contain drugs; it is sufficient if car is used to "facilitate" purchase).
 
 
 39
 Finally, we conclude that a sufficient nexus was established between the purchase of the vehicles with cash and claimant Fisher's involvement in illegal drug transactions. Although the government did not tie the vehicle to a specific drug transaction, both vehicles were purchased with cash during years when the district court found that claimants had failed to demonstrate legitimate alternate sources of income large enough to account for their cash expenditures. See One 1987 Mercedes 560 SEL, 919 F.2d at 331; Parcels of Land, 903 F.2d at 38; Edwards, 885 F.2d at 390. Accordingly, we affirm the district court's judgement of forfeiture.
 
 
 
 *
 The Honorable Dale E. Saffels, Senior United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Title 21, United States Code, Section 881 provides in relevant part:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (4) All conveyances, including ... vehicles ... which are used, or are intended for use to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9) ...
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without knowledge or consent of that owner.
 
 
 [2]
 Title 21, United States Code, Section (b) provides in relevant part:
 Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued ... when--
 (1) the seizure is incident to an arrest or a search under a search warrant....
 
 
 [3]
 Appellants' argument that the affidavit was based upon impermissible hearsay is also without merit. Appellants challenge the magistrate's reliance upon statements made by "Chris" during the controlled buy. Although this statement is clearly hearsay, and perhaps multiple hearsay, hearsay may be used to establish probable cause for a search warrant. Snow, 919 F.2d at 1460. We conclude that the circumstances set out in the affidavit, including the actual production of illicit drugs during the controlled buy, provides sufficient corroboration for Chris' statement to be considered in issuing the warrant
 
 
 [4]
 The district court found that the government had failed to establish a connection between the defendant property and the illegal gambling. This factual and legal conclusion is not challenged on appeal. Thus, we will only address whether the district court erred in finding that the defendant property was subject to forfeiture pursuant to the remaining statutory provisions. Because we conclude that the defendant property was properly forfeited under 21 U.S.C. § 881(a)(4) and (6), we need not determine whether forfeiture was proper under 26 U.S.C. §§ 7301 and 7302, for failure to pay income tax. Neither side has provided, nor have we found, any case law supporting such an application of this forfeiture provision. However, we leave this determination for another day
 
 
 [5]
 Various circuits have held that property is forfeitable where the "aggregate of facts" show that probable cause exists that the property was used in connection with or was derived from a drug transaction. United States v. Parcels of Land, etc., et al., 903 F.2d 36, 38-39 (1st Cir.1990); United States v. Padilla, 888 F.2d 642, 643-44 (9th Cir.1989); United States v. Edwards, 885 F.2d 377, 390 (7th Cir.1989) (totality of the circumstances)