**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 4 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

$43,646.00 (FORTY-THREE
THOUSAND SIX HUNDRED
FORTY-SIX) DOLLARS IN U.S.
CURRENCY,

Defendant.

_____

LAROAN F. VERNERS,

Claimant - Appellant.

No. 97-5241

(N.D. Oklahoma)

(D.C. No. 96-CV-505-B)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Claimant Laroan Verners appeals from the district court's judgment ordering the forfeiture of $43,646 in United States currency, pursuant to 21 U.S.C. § 881(a)(6).  He contends that the district court erred by:  (1) refusing to appoint an attorney to represent him; (2) allowing the case to go forward despite inadequate service; and (3) allowing the matter to go to the jury without requiring the government to establish a nexus between the $43,646 and illegal activity.  We affirm.

On January 5, 1993, police executed a search warrant at the home of Verners' mother.  At that time, the officers found a large "cookie" of crack cocaine in the kitchen.  They also found large amounts of cash in proximity to drugs in Verners' bedroom.  Specifically, the police found a cup with a razor blade and some loose crack cocaine, a plastic baggy with ten grams of crack cocaine, and $491 in two bundles in the bottom drawer of a file cabinet.  Appellee's App. Vol. II at 33.  In the file cabinet's top drawer, police found approximately $5,000 loose in the front part of the drawer.  Id. at 92.  In the back portion of the drawer they found two bundles—one wrapped in gray duct tape containing $19,990, and another bundle banded with rubber bands containing $17,020.  Id. at 91.  The top drawer also contained hanging file folders, in which

the officers found three receipts for record sales.[1]   Id. at 93.  Finally, the officers found $1000 on a stand next to a TV in the laundry room.        Id. at 62.

On April 30, 1993, the government entered a Declaration of Forfeiture respecting the money.  In October 1993, Verners was tried by a jury and convicted of possession of cocaine base with intent to distribute, maintaining an establishment for manufacturing drugs, aiding and abetting his codefendant in the commission of those crimes, and using a firearm during and in relation to the drug crimes.  After three separate direct appeals and one related motion pursuant to 28 U.S.C. § 2255, his convictions for aiding and abetting his codefendant and for using a firearm have been vacated.     See United States v. Verners   , 53 F.3d 291 (10th Cir. 1995);   United States v. Verners    , No. 95-5194, 1997 WL 183510 (10th Cir. Apr. 15, 1997);   United States v. Verners    , No. 98-5044, slip op. (10th Cir. May 26, 1999).

The present action results from a Fed. R. Crim. P. 41(e) motion which Verners made in the district court.    [2]  Alleging his lack of notice of the 1993 administrative forfeiture as grounds, Verners' motion sought the return of the money.  R. Vol. II, Tab 87.  The district court agreed that notice had been

_____

[1]Verners had produced two "gangsta rap" albums.  Appellee's App. Vol. II at 60, 230.

[2]At the time Verners made the Rule 41(e) motion, the case was on its first remand for resentencing.

inadequate.  Therefore, it vacated the forfeiture without prejudice to the government's bringing a new proceeding.     Id., Tab 106.  Thereafter, the government instituted a new administrative action.  When Verners filed his claim, the government filed a complaint for forfeiture in rem, thereby instituting the instant judicial proceedings.

As his first claim of error, Verners complains that he "was not allowed to have an attorney appointed to [his] case."  Appellant's Br. at 1.  However, the record contains no indication that he requested the district court to appoint counsel.  In the absence of any showing that he raised the matter before the district court, we will not consider this claim on appeal.     [3]  See Roberts v. Roadway Express, Inc.  , 149 F.3d 1098, 1104 (10th Cir. 1998).

As his second claim of error, Verners argues that he received inadequate notice of the forfeiture proceedings.  Verners complains that the government sent notice of the original 1993 administrative forfeiture to his mother's house, despite the government's knowledge that he was incarcerated in the county jail and represented by counsel.  As noted previously, the district court vacated the 1993 administrative forfeiture.  Thereafter, he was personally served with a civil complaint in this action, and he answered without raising any issue as to service.

---

[3]In any event, there is no Sixth Amendment right to counsel in a civil forfeiture case.  United States v. Deninno, 103 F.3d 82, 86 (10th Cir. 1996).

As the government correctly notes, because the original forfeiture was vacated, and judicial forfeiture proceedings were subsequently commenced within the statute of limitations, [4] any alleged failure to provide proper notice for the vacated proceeding is harmless error. Cf. Clymore v. United States, 164 F.3d 569, 573 (10th Cir. 1999); United States v. Deninno, 103 F.3d 82, 85-86 (10th Cir. 1996).

As his third claim of error, Verners complains that the government did not establish probable cause to support its seizure of, or forfeiture claim to, the money. We review factual findings in a forfeiture case for clear error, and we review legal conclusions de novo. United States v.$149,442.43 in U.S. Currency, 965 F.2d 868, 876 (10th Cir. 1992). Whether facts produced at a forfeiture proceeding constitute probable cause is a legal conclusion which we review de novo. Id.

Based upon the legal fiction that the property itself is guilty of a crime or is proceeds of a crime, a forfeiture proceeding is an in rem action against the property. Id.; see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 680-84 (1974). The government bears the initial burden to show probable

---

[4]Pursuant to 21 U.S.C. § 881(d), "[t]he forfeiture procedures relating to the customs laws apply to forfeitures occasioned by violation of the drug laws." United States v. Clymore, 164 F.3d 569, 572 n.3 (10th Cir. 1999). The customs statutes provide that "[n]o suit or action to recover . . . any pecuniary penalty or forfeiture of property . . . shall be instituted unless such suit or action is commenced within five years after the time when the alleged offense was discovered." 19 U.S.C. § 1621.

cause for instituting the forfeiture action, i.e., probable cause that the property was used to commit or facilitate a felony violation of Title 21, United States Code. See United States v. 9844 South Titan Court, Unit 9, Littleton, Colo. , 75 F.3d 1470, 1477 (10th Cir. 1996), overruled in part on other grounds by United States v. Ursery , 518 U.S. 267 (1996). The standard for establishing probable cause for a forfeiture is similar to the standard applied to arrests, searches and seizures. $149,442.43 , 965 F.2d at 876. Thus, the government must demonstrate reasonable grounds for belief of guilt. Id. This showing requires more than mere suspicion, but less than prima facie proof. Id. Once the government makes its showing, the burden shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture or that a defense to forfeiture exists. Id. at 877. If the claimant fails to rebut the showing of probable cause, the government's showing of probable cause is sufficient to support a judgment of forfeiture. See id.

In this case, the government presented witnesses who testified to finding the money in the file cabinet where drugs and drug paraphernalia were located. Because the majority of the money was not in the same drawer as the drugs, Verners argues the government failed to establish a nexus with the drugs. Rather, since most of the money was in the top drawer where he kept hanging files concerning his record business, Verners contends that the money can be

connected only with the record business. We disagree. Given the close proximity of the money to the drugs, as well as the way the money was bundled, [5] the district court did not err in finding probable cause.

Accordingly, the burden shifted to Verners to establish a defense to the forfeiture. In this case, Verners' only defense consisted of various receipts dating from 1991 and 1992 which purported to reflect proceeds from car and record sales, as well as almost $1600 in insurance payments for car repairs. [6] Thus, Verners argued that the seized funds represented his income from legal businesses. However, Verners never established the authenticity of the receipts. [7] Moreover, in his own earlier deposition, Verners had stated that he never made any profit on the record or car sales, because he put all monies he earned back into the record business. [8] This testimony obviously contradicted his court room

---

[5] The government presented evidence that one of the bundles represented the approximate cost of a kilogram of drugs. Appellee's App. Vol. II at 270.

[6] The government witness testified that only three of the receipts had been in the file cabinet. Appellee's App. Vol. II at 93. Verners offered no testimony to establish where the remaining receipts had been kept.

[7] Verners did not testify. Instead, during the government's case in chief, he presented the receipts to the government's witnesses, who duly noted what they purported to be. Thus, although the receipts were admitted in evidence, no foundation was established.

[8] On direct and redirect, the government asked one of its witnesses who was present at Verners' deposition to describe Verners' testimony. Appellee's App. Vol. II at 39-41, 78-79, 108-11. On cross examination, Verners also asked the

(continued...)

argument. Thus, the jury was presented with witnesses who supported the government's claims. By contrast, Verners presented no witnesses, and he failed to establish the authenticity of the evidence he sought to introduce. Under the circumstances, the jury obviously did not believe Verners' defense. On review, we cannot assess credibility of witnesses or substitute our judgment for that of the jury. See Roberts , 149 F.3d at 1103.

AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[8](...continued)
witness about the deposition. Id. at 81.